2010 WY 56

**M & M AUTO OUTLET, a Wyoming Corporation, Appellant (Defendant),**

v.

**HILL INVESTMENT CORPORATION, a Colorado Corporation, d/b/a First Financial, Inc., Appellee (Plaintiff).**

No. S–09–0160.

Supreme Court of Wyoming.

April 28, 2010.

Representing Appellant: Stephen R. Winship of Winship & Winship, P.C., Casper, Wyoming.

Representing Appellee: Richard D. Bush, David Evans and John A. Coppede of Hickey & Evans, LLP, Cheyenne, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶ 1] M & M Auto Outlet (M & M) and Hill Investment Corporation, doing business as First Financial, Inc., (FFI) entered into a contract in which FFI agreed to purchase vehicle loans from M & M and perform collection activities on the loans at its expense. In the event an M & M customer became delinquent on a loan, the contract provided that M & M would pay FFI the "full recourse amount." Alleging that M & M failed to pay the full recourse amount on delinquent loans in accordance with the contract, FFI filed a complaint for breach of contract. The district court granted summary judgment for FFI and ordered M & M to pay the full recourse amount plus interest. M & M appealed. We affirm.

## ISSUES

[¶ 2] M & M presents the following issues for this Court's determination:

1. Whether the parties' Agreement was ambiguous?

2. Was there a genuine issue of material fact as to whether Plaintiff–Appellee performed in good faith its obligation under the parties' Agreement to diligently collect on the loans it purchased from Defendant–Appellant?

3. Whether Plaintiff–Appellee's breach of the parties' Agreement excused Defendant–Appellant's recourse obligation?

4. Was there a genuine issue of material fact as to whether Plaintiff–Appellee mitigated its damages?

5. Did Plaintiff–Appellee produce sufficient evidence to support summary judgment in its favor?

6. Whether the District Court abused its discretion in refusing to continue the summary judgment hearing when Plaintiff–Appellee had not timely responded to Defendant–Appellant's discovery?

FFI asserts the district court properly granted summary judgment in its favor because the contract was clear and unambiguous, FFI was not required to prove it had taken specific steps to mitigate and sufficient evidence supported the order. FFI also asserts the district court did not abuse its discretion in denying M & M's motion to vacate the summary judgment hearing.

## FACTS

[¶ 3] M & M is in the business of selling used cars and does so in various locations in Wyoming. As part of the business, M & M provides sub-prime financing for its customers. FFI is in the business of purchasing sub-prime consumer loans from used car dealers such as M & M. When companies like FFI purchase loans from used car dealerships like M & M, the dealership receives immediate operating capital and the loan purchaser assumes responsibility for collecting on the loans.

[¶ 4] On July 22, 2003, FFI offered M & M the opportunity to participate in a "full recourse paper-buying program." The agreement setting forth the terms of the program provided that FFI would purchase the loans M & M extended to its customers; M & M's customers then would make the monthly loan payments directly to FFI rather than to M & M; and, in the event a customer was delinquent in making the payments due:

FFI will perform all collection activities on accounts including but not limited to telephone collections and dunning when appro-

priate. All collection costs, excluding repossession, are paid entirely by FFI.

The agreement further provided that FFI would advise M & M of any "problem collection accounts" and exercise its "Full Recourse option" after discussing those accounts with M & M. Thus, M & M retained potential responsibility for the auto loans in the event of customer default. The amount due to FFI from M & M upon customer default was to be "the funding amount by FFI less any principal received on the account." The agreement required M & M to pay off all designated "recourse accounts" within 30 days.

[¶ 5] M & M's owner and FFI's general manager signed the agreement on behalf of the respective entities in 2003 and FFI proceeded to purchase the loan contracts. In 2008, FFI filed a complaint alleging that M & M breached the agreement by failing to pay the full recourse amounts due as the agreement required. FFI sought judgment against M & M in the amount of $194,044.28 plus post-judgment interest and attorney's fees. M & M generally denied that it breached the agreement and asserted as an affirmative defense that FFI negligently and in bad faith failed to fully perform its obligation to collect on the accounts.

[¶ 6] FFI filed a motion for summary judgment to which it attached portions of the deposition of Keith Smith, M & M's vice president, secretary and the person in charge of its daily operations; the affidavit of Don Shaw, FFI's general manager; a list of the delinquent customer accounts and amounts owed; the 2003 full recourse agreement; and the notice of recourse designated accounts FFI provided to M & M upon the delinquencies. In support of its motion, FFI asserted that the full recourse program agreement clearly and unambiguously required M & M to pay to FFI the amounts owing from defaulting customers upon FFI's designation of the account as subject to full recourse.

[¶ 7] M & M responded to the motion and submitted the affidavit of Mr. Smith in which he averred that he entered into the 2003 full recourse agreement in reliance upon FFI "undertaking full and diligent collection efforts of the accounts it purchased in conformity with the generally followed practices for collection of delinquent payments arising under sales and financing agreements for 'subprime' used automobiles." Mr. Smith asserted that, contrary to general practice, FFI did not hire an attorney or collection agency or engage in efforts to repossess the vehicles involved; instead, FFI made a couple of telephone calls and then sought full recourse. Mr. Smith also averred that FFI did not discuss the problem accounts with him before seeking recourse as the agreement required. Mr. Smith stated that when it became apparent that FFI was making only a "token effort" to collect on the delinquent accounts, he "considered that [FFI] had breached the Agreement thereby relieving M & M of further performance."

[¶ 8] M & M also filed the affidavit of Diana Gray who stated she has worked in the automobile sales and finance business since 1978, is familiar with sub-prime financing of used automobiles and has "years of experience in various collection practices involving the documentation, administration and enforcement of sub-prime automobile financing obligations." Ms. Gray stated that "a standard part of collecting on these kinds of loans is to engage in 'skip tracing'"[1] and, when telephone or written contact fails, repossess the vehicle, turn the matter over to a collection agency, file a claim in small claims court or, if warranted by the amount owed, hire an attorney to file a claim in district court. Ms. Gray averred "it is not proper or complete performance under an agreement for the collection of delinquent purchase agreements arising from sub-prime automobile loans to limit collection activities to a few telephone calls."

[¶ 9] In its reply to M & M's submissions, FFI distinguished full recourse contracts, in which the dealership must make good on any loans it sells that end up in default, from nonrecourse contracts, where there is no recourse against the dealer in the event of

---

1. Skip tracing is a colloquial term used to describe the process of locating a person's whereabouts.

default, and asserted FFI made a business decision to pay a premium of $4,247,761.47 for the accounts on the basis that, in the event of default, it had the contractual right to seek payment of the amounts due from M & M. FFI attached a second affidavit from its general manager, Mr. Shaw, attesting to that decision and payment amount. FFI also asserted it had complete discretion in its collection efforts under the plain language of the agreement. Additionally, FFI pointed to facts showing that M & M did not complain about FFI's collection practices until after FFI filed this action; in 2004 Mr. Smith wrote to FFI stating that M & M was moving away from full recourse agreements, not because of FFI's collection practices, but because they were not profitable for M & M; and in a subsequent communication M & M acknowledged it was behind in making the full recourse payments, suggested a plan for it to become current, and did not mention any problem with FFI's collection practices. FFI asserted M & M's criticism of FFI's practices was an after-the-fact attempt to avoid making the payments.

[¶ 10] After a hearing, the district court granted summary judgment for FFI. The district court concluded the agreement was not ambiguous, M & M breached the agreement by failing to timely pay the amounts due and FFI incurred damages in the amount of $186,766.50 plus $52,248.53 in interest. M & M timely appealed the judgment to this Court.

### STANDARD OF REVIEW

[¶ 11] When reviewing an order granting summary judgment, we consider the record *de novo*. *Stone v. Devon Energy Prod. Co., L.P.*, 2009 WY 114, ¶ 10, 216 P.3d 489, 492 (Wyo.2009).

[W]e have exactly the same duty as the district judge; and, if there is a complete record before us, we have exactly the same material as did [the district judge]. We must follow the same standards. The propriety of granting a motion for summary judgment depends upon the correctness of a court's dual findings that there is no genuine issue as to any material fact and that the prevailing party is entitled to

judgment as a matter of law. This court looks at the record from the viewpoint most favorable to the party opposing the motion, giving to him all favorable inferences to be drawn from the facts contained in affidavits, depositions and other proper material appearing in the record.

*Wyoming Medical Center v. Wyoming Ins. Guar. Ass'n*, 2010 WY 21, ¶ 11, 225 P.3d 1061, 1064 (Wyo.2010), quoting *McGarvey v. Key Prop. Mgmt. LLC*, 2009 WY 84, ¶ 10, 211 P.3d 503, 506 (Wyo.2009).

[¶ 12] The summary judgment ruling challenged in this case arose out of the district court's determination that the parties' agreement was clear and unambiguous. We review that determination by applying the following standards:

The initial question of whether the contract is capable of being understood in only one way is a question of law for the court. If the court determines that the contract is capable of being understood in only one way, then the language used in the contract expresses and controls the intent of the parties. In such case, the next question, what is that understanding or meaning, is also a question of law. When we review the district court's summary judgment decisions that a contract is capable of being understood in only one way and what that understanding is, we accord no deference to those decisions. As we have said, "[w]e are ... at liberty to make a determination as to the existence of ambiguity whether or not the parties here agree thereto one way or the other, and whether or not the trial court has reached a conclusion thereon one way or the other."

*Examination Mgmt. Servs., Inc. v. Kirschbaum*, 927 P.2d 686, 689 (Wyo.1996) (internal citations omitted).

### DISCUSSION

*1. The Meaning of the Contract*

[¶ 13] M & M asserts summary judgment was not appropriate because the parties' agreement was ambiguous. M & M points to the following language: "FFI will perform *all collection activities* on accounts

*including but not limited to* telephone collections and dunning when appropriate."[2] (Emphasis added). M & M contends FFI treated "collection activities" to mean "several telephone calls to delinquent customers," while M & M understood the language required FFI to make "a good faith effort to undertake those industry recognized standards necessary to realize upon these inherently risky accounts receivable." M & M contends this ambiguity in what the term "collection activities" meant was a factual question precluding summary judgment.

[¶ 14] FFI responds that when placed in context with the other provisions of the agreement and the surrounding circumstances, the term "collection activities" is not ambiguous. FFI points to the fact that the contract is referred to as "Full Recourse," meaning M & M guaranteed its customers' performance and, in the event they failed to perform, agreed to pay FFI the amounts owing within 30 days. When placed in this context, FFI contends, the collection provision simply identified which of the parties was responsible for performing the collection activities. It did not impose any conditions or requirements for how FFI was to go about those activities, but left that to FFI's discretion.

[¶ 15] The law governing judicial interpretation of contracts is well-settled:

In considering the meaning of a contract, we focus on the parties' intent. If possible, we determine their intent from the language used in the agreement. Where the language is clear and unambiguous, we limit our inquiry to the four corners of the document, giving the words contained therein their ordinary meaning. The parties are free to incorporate within their agreement whatever lawful terms they desire, and we are not at liberty, under the guise of judicial construction, to rewrite the agreement. It is only when a contract is ambiguous that we construe the document by resorting to rules of construction. A contract is ambiguous if indefinite-

ness of expression or double meaning obscures the parties' intent.

*Christensen v. Christensen*, 2008 WY 10, ¶ 13, 176 P.3d 626, 629 (Wyo.2008), citing *Cathcart v. State Farm Mut. Auto. Ins. Co.*, 2005 WY 154, ¶ 18, 123 P.3d 579, 587 (Wyo. 2005).

[¶ 16] In its entirety, the "special Full Recourse paper-buying program" agreement provided:

- FFI will purchase contracts, with terms not to exceed 36 months, at 75% of the principal balance due at the date of funding, upon completing customer interview and issuing an approval.

- [Annual percentage rate] on all contracts must be 21%.

- M & M must send the following documents for each contract to FFI for funding: original security agreement, original credit application, and lienholder copy of warrant[y] if one is purchased by the consumer.

- M & M must fill out [the] assignment section on the original security agreement, sign, and write the following statement *"Full Recourse To Dealer for Life Of Note"* or fill in the Recourse provision on the Security Agreement. (Emphasis in original).

- M & M will not make payments on behalf of the consumer.

- *FFI will perform all collection activities on accounts including but not limited to telephone collection and dunning when appropriate.* All collection costs, excluding repossession, are paid entirely by FFI.

- *FFI will advise dealer of any "problem collection accounts", their status when they become a problem, and will exercise its Full Recourse option after discussing the account with M & M.*

- *Full Recourse amount due by M & M to FFI will be the funding amount by FFI less any principal received on the account. M & M to pay off all designated "recourse accounts" within 30 days.*

---

**2.** The word "dun" is defined as follows: To make persistent demands (as for money). *Websters Third New Int'l Dictionary* 701 (2002).

■ FFI will present a monthly report to M & M that analyzes this portfolio from a "loss" perspective. M & M to provide to FFI a reconciliation report on each repossession as to the income and expenses associated with the disposal of the vehicle. The reconciliation report will be incorporated in the FFI monthly report to M & M to assist in a more accurate "loss percentage" of FFI funding amounts.

■ FFI will not enter into any full recourse relationship with other dealers in Casper, Douglas, Sheridan, Gillette, Riverton, or Lander as long as M & M sells over [$]2 million worth of paper to FFI annually.

■ FFI will offer good standing M & M customers returning to FFI an upgrade program. The payoff to dealer will be a regular payoff amount less 15%. FFI must receive the discounted payoff amount from M & M before funding the new deal.

■ FFI will offer a "mechanical unwind" program to M & M for customers returning to FFI. The program allows M & M to use a trade in value of the buyback amount (funding amount by FFI less any principal received). This program is offered only for 90 days from the original contract date. FFI must receive the buyback amount from M & M before funding the new deal.

■ M & M to provide a dedicated employee to FFI to assist in all collection and title issues.

■ M & M to provide an outlet for FFI to sell all vehicles that do not fall under this agreement as a result of repossession.

(Emphasis added).

[¶ 17] From the four corners of the agreement, it is clear the parties intended the agreement to be a full recourse agreement in which FFI would purchase from M & M the loans M & M made to its customers, M & M's customers would then make payments on the loans directly to FFI and FFI, at its expense, was responsible for collection activities, except for repossession expenses. In interpreting the words "collection activi-

ties" as used in this agreement, our task is to determine the parties' intent by giving the words their plain and ordinary meaning. *Christensen,* ¶ 13, 176 P.3d at 629. Plain meaning is that "meaning which [the] language would convey to reasonable persons at the time and place of its use." *Hickman v. Groves,* 2003 WY 76, ¶ 6, 71 P.3d 256, 258 (Wyo.2003) (citation omitted).

[¶ 18] The ordinary meaning of the word "collect" as used in the context of this agreement is: "to present as due and receive payment for." *Websters Third New Int'l Dictionary* 444 (2002). The ordinary meaning of the word "activity" is "the quality or state of being active." *Id.* at 22. Giving the phrase "collection activities" its ordinary meaning, the agreement required FFI to pursue payments due before advising M & M of any "problem collection accounts" and exercising its "Full Recourse option." It is undisputed that FFI pursued payments due from the customers before advising M & M that there were problem accounts for which it was seeking full recourse. M & M contends, however, that FFI did not do enough in its collection efforts.

[¶ 19] Relying on Ms. Gray's affidavit, M & M asserts the term "collection activities" as generally used in the used car financing business means doing much more than making a few telephone calls. M & M contends, in the context of the used car financing business, the phrase required FFI to make several telephone calls per day for 30 days, conduct skip tracing, repossess the vehicle at issue, turn the account over to a reputable collection agency, file a claim in small claims court or hire an attorney if the amount owed was within the jurisdictional limit of the district court. Given this meaning of "collection activities," M & M contends a genuine issue of fact existed precluding summary judgment.

[¶ 20] Wyoming precedent demands that we look to the language of the agreement and, when appropriate, to the facts and circumstances surrounding its execution to determine the parties' intent. *Ecosystem Resources, L.C. v. Broadbent Land & Resources, L.L.C,* 2007 WY 87, ¶ 35, 158 P.3d

685, 694 (Wyo.2007). Relevant circumstances considered in determining the parties' intent may include the relationship of the parties, the subject matter of the contract, and the parties' purpose in making the contract. *Id.*, ¶ 10, 158 P.3d at 688. Evidence of trade usage may also be relevant in determining the parties' intent. As we said in *Hickman:*

> [W]hile words in a contract are ordinarily to be construed according to their plain, ordinary, popular or legal meaning, as the case may be, if in reference to the subject matter of the contract, particular expressions have by trade usage acquired a different meaning, and both parties are engaged in that trade, the parties to the contract are considered to have used them according to their different and peculiar sense as shown by such trade usage. Parol evidence is admissible to establish the trade usage, and that is true even though the words are in their ordinary or legal meaning entirely unambiguous, since, by reason of the usage, the words are used by the parties in a different sense.

*Id.*, ¶ 13, 71 P.3d at 261, quoting 12 Samuel Williston, *A Treatise on the Law of Contracts*, § 34.5 (4th ed. 1999) (footnotes omitted). On the basis of this principle, we reversed a summary judgment ruling in *Hickman* because the parties submitted evidence creating a genuine issue of material fact as to the meaning of the words "oil rights" as used in a warranty deed and whether those words were intended to include both oil and gas rights, or only oil with no attendant gas rights. *Hickman,* ¶ 14, 71 P.3d at 261.

[¶ 21] The difficulty with M & M's argument in the present case is that the parties are really not disputing what the term "collection activities" means. There is no disagreement that FFI was required to pursue full payment from the customer on the outstanding loans. The disagreement concerns the lengths to which FFI was required to go in collecting payments, and that is something the agreement simply does not address. M & M does not claim that FFI failed to assume responsibility for collecting on the accounts, but claims instead that FFI did not

take the steps to collect that M & M wanted it to take. It may be that Ms. Gray is correct that where a recourse agreement like this one is involved, a used car dealer typically wants the finance company to use every possible collection technique before seeking recourse. However, the agreement in this case did not specify the techniques FFI was required to use and we are not willing to conclude that every recourse agreement in which a finance company assumes responsibility for "collection activities" requires repossession as one of those activities before recourse can be sought.

[¶ 22] Additionally, the record demonstrates that M & M and FFI began their business relationship in 1999; thus, the parties had dealings with each other for several years before entering into the agreement at issue here. The record also reflects that both parties had extensive experience in used car financing. M & M sold used cars throughout the State of Wyoming and had experience in sub-prime financing, which Mr. Smith defined as providing credit for less than credit worthy individuals. M & M financed the vehicles it sold by holding installment contracts itself or selling them to finance companies such as FFI. FFI was only one of the finance companies with which M & M did business. M & M had experience with both recourse and non-recourse contracts and knew the difference between the two. Mr. Smith testified that recourse agreements gave M & M freedom to explore more potential car deals than it could in transactions involving non-recourse agreements. FFI's general manager attested that FFI made a business decision to pay a premium for the accounts in question so that it would have the contractual right to full recourse. Mr. Smith, testifying by deposition on behalf of M & M, stated that the 2003 agreement gave FFI complete discretion as to how to go about collecting on the delinquent accounts. There is no evidence in the record that M & M took issue with FFI's collection activities until after FFI filed its complaint. In fact, contemporaneous documents reflect the complete absence of any complaints by M & M.

[¶ 23] In light of these surrounding circumstances and giving the language used in the agreement its plain and ordinary meaning, we are not persuaded the parties' intent at the time they executed the agreement was for FFI to go to the lengths described in Ms. Gray's affidavit to collect on the delinquent accounts. The agreement itself contains no indication that the parties intended "collection activities" to establish the standard of performance M & M suggests. The language in the agreement stating that "collection activities" *include but are not limited to* telephone collections and dunning likewise does not suggest the parties intended FFI to take particular steps such as repossessing vehicles, utilizing collection agencies, filing court claims or hiring lawyers. If M & M desired FFI's collection efforts to include these specific activities, it was free to incorporate those terms in the agreement. It did not, and under the circumstances presented here, we will not rewrite the agreement under the guise of judicial construction. We uphold the district court's ruling that the meaning of the parties' agreement was clear and unambiguous.

### 2. Alleged Breach by FFI

 [¶ 24] M & M claims it was excused from performing under the agreement because FFI breached the agreement when it failed to perform its collection activities in good faith. M & M's vice president, Keith Smith, testified as follows:

> I did pay, trying to fulfill the obligation—although I felt the obligation was not due and just—set out to try to make good on it. And more information came in as we went as to the ineffective and inability for [FFI] to collect the notes. My understanding was that they needed to collect all monies due, and they didn't. They gave up routinely and often, and did not fulfill their end of the contract. So I put a halt to everything at that point.

This testimony suggests that M & M stopped paying because FFI failed to collect the amounts due from M & M's customers, as if collection had to occur before the full recourse provision was triggered. Collection of the amounts due clearly was not a prerequi-

site to FFI seeking payment from M & M. Rather, the agreement unambiguously provided that FFI was entitled to full recourse from M & M in cases where its collection activities proved unsuccessful.

[¶ 25] M & M also asserts that it was excused from payment of the uncollected amounts because FFI did not perform its collection efforts in good faith but did so halfheartedly, essentially making only a couple of telephone calls to delinquent customers and then seeking full recourse. In support of this assertion, M & M points to evidence that FFI did not involve a collection agency or a lawyer in its collection efforts and did not make efforts to repossess any of the vehicles.

 [¶ 26] In *Scherer Constr., LLC v. Hedquist Constr., Inc.*, 2001 WY 23, ¶ 24, 18 P.3d 645, 655 (Wyo.2001), we held that parties to a commercial contract may bring a claim for breach of the implied covenant of good faith and fair dealing based upon a contract theory. Given the agreement between M & M and FFI, it follows that a covenant of good faith and fair dealing is implied in the contract. The implied covenant of good faith and fair dealing:

> [R]equires that a party's actions be consistent with the agreed common purpose and justified expectations of the other party. . . . The purpose, intentions and expectations of the parties should be determined by considering the contract language and the course of dealings between and conduct of the parties. The covenant of good faith and fair dealing may not, however, be construed to establish new, independent rights or duties not agreed upon by the parties. In other words, the concept of good faith and fair dealing is not a limitless one. The implied obligation must arise from the language used or it must be indispensable to effectuate the intention of the parties. In the absence of evidence of self-dealing or breach of community standards of decency, fairness and reasonableness, the exercise of contractual rights alone will not be considered a breach of the covenant.

*Whitlock Constr., Inc. v. South Big Horn County Water Supply Joint Powers Bd.*, 2002 WY 36, ¶ 24, 41 P.3d 1261, 1267 (Wyo.

2002) (citation omitted). Although many claims for breach of good faith involve questions of fact making summary judgment inappropriate, summary judgment may be appropriate where, under the facts in the record, the party's actions were in conformity with the clear language of the contract. *Id.*

[¶ 27] Applying these standards, we conclude there is no genuine issue of material fact on M & M's breach of the implied covenant defense. The contract language provided that FFI was responsible for collection activities, including telephone collections and dunning when appropriate. The contract language did not state that FFI was required to make repeated telephone calls for several weeks, hire a collection agency or a lawyer, file a small claims action or repossess the vehicles. There is no evidence in the record that at the time they entered into the agreement either party intended that FFI was required to engage in those activities. Had the parties intended to impose those duties on FFI, they were free to expressly state that intention in the contract itself. Particularly where, as here, the parties' business relationship spanned several years and both parties were experienced in the used car financing business, we are not willing to infer that such duties existed absent clear language in the contract or evidence indicating that was the parties' intent at the time the agreement was executed.

### 3. Mitigation of Damages

[¶ 28] M & M claims FFI failed to demonstrate that it took efforts to mitigate its damages. M & M contends FFI's failure to mitigate is best illustrated by evidence that in fifty cases, customers were still driving vehicles for which they did not pay the full purchase price. M & M asserts that if FFI had repossessed those vehicles, its damages would have been significantly reduced.

[¶ 29] We have recognized that a party to a contract has a duty to mitigate its damages. We have relied on Restatement (Second) of Contracts, § 350 (1981), which states:

(1) Except as provided in Subsection (2), damages are not recoverable for loss that

the injured party could have avoided without undue risk, burden or humiliation.

(2) The injured party is not precluded from recovery by the rule stated in subsection (1) to the extent that he has made reasonable but unsuccessful efforts to avoid the loss.

*Lewis v. Community First Nat'l Bank, N.A.,* 2004 WY 152, ¶ 9, 101 P.3d 457, 459 (Wyo. 2004). Generally the question of whether a party exercised reasonable diligence to mitigate its damages is for the fact finder. *Moore v. Continental Ins. Co.,* 813 P.2d 1296, 1300 (Wyo.1991). Where reasonable minds could not differ with respect to efforts to mitigate, however, summary judgment is appropriate. *Id.*

[¶ 30] The difficulty with M & M's mitigation claim is that the parties' agreement contained a provision expressly stating how FFI was to be paid if its collection activities were unsuccessful. The agreement provided: "Full Recourse amount due by M & M to FFI will be the funding amount by FFI less any principal received on the account." This provision, read together with the "collection activities" provision, clearly states that in the event FFI was unsuccessful in collecting the amounts due, it was entitled to full recourse as expressly defined in the agreement.

[¶ 31] The other problem with M & M's contention is that the agreement did not require FFI to repossess the vehicles as part of its collection activities. For this Court to conclude that FFI had a duty to mitigate its damages by taking steps to repossess vehicles would be to impose upon FFI a duty the contract did not require. The contract clearly provided that upon performing collection activities, FFI was entitled to the full recourse amount due, that is, the funding amount by FFI less any principal received on the account. We will not read duties into the contract to change the specific contractual provision for calculating damages.

### 4. Sufficiency of the Evidence to Support Summary Judgment

[¶ 32] M & M claims FFI did not present sufficient evidence to support summary judgment because it did not attach

copies of the problem accounts or the record of payments to the affidavit it submitted in support of its summary judgment motion. Instead, FFI attached a summary identifying the problem accounts, date recourse was declared, buyback amount, accrued interest and the total due. M & M contends W.R.C.P. 56(e) requires documents referred to or reviewed by an affiant to be attached to the affidavit.

[¶ 33] W.R.C.P. 56(e) provides in pertinent part as follows:

> (e) *Form of affidavits; Further Testimony; Defense Required.*—Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

W.R.C.P. 56(e) requires that an affidavit (1) be made on personal knowledge; (2) set forth facts which are admissible in evidence; (3) demonstrate the affiant's competency to testify on the subject matter of the affidavit; and (4) have attached to it the papers and documents to which it refers. *Lamar Outdoor Advertising v. Farmers Co–Op Oil Co. of Sheridan,* 2009 WY 112, ¶ 10, 215 P.3d 296, 300 (Wyo.2009).

[¶ 34] The affidavit to which M & M refers is that of Mr. Shaw, FFI's general manager. Mr. Shaw stated in the affidavit that as general manager he: managed "all aspects of a multi-state automobile sub-prime finance company specializing in purchasing point-of-sale, short-term, high-risk loans from dealerships such as M & M ..."; was FFI's primary business contact with M & M; had extensive experience working with M & M from 1999 through 2008; and executed the July 22, 2003, agreement. He also stated that he had personal knowledge of the notes FFI purchased from M & M and the recourse accounts and was responsible for giving notice to M & M on accounts that were designated as recourse. Mr. Shaw referenced three exhibits which, like his affidavit, were attached to FFI's summary judgment

memorandum: the 2003 full recourse program agreement, the summary described in paragraph 32 above, and a list of the recourse designated accounts he provided to M & M. The affidavit was made on personal knowledge, set forth facts that would be admissible in evidence, showed that Mr. Shaw was competent to testify to the matters stated therein and had attached to it the documents Mr. Shaw referenced. It, therefore, satisfied the requirements of Rule 56(e).

[¶ 35] M & M asserts the evidence FFI submitted was insufficient to support summary judgment because it did not attach to Mr. Shaw's affidavit copies of the actual problem accounts or records of payment on the accounts but instead attached a summary of the actual documents. W.R.C.P 56(e) requires a summary judgment motion to be supported by admissible evidence. W.R.E. 1006 provides that writings which cannot conveniently be examined in court may be presented in the form of a summary, as long as the party relying on the summary makes the documents upon which the summary is based available for examination and copying by the opposing party. There is no contention here that FFI did not make the actual documents available to M & M. The summary was sufficient evidence to support FFI's motion.

### 5. *Prematurity of Summary Judgment*

[¶ 36] In its final issue, M & M asserts the summary judgment was premature because discovery had not been completed. FFI filed its complaint on March 10, 2008. FFI filed its summary judgment motion ten months later, on January 13, 2009. On February 11, 2009, M & M filed a motion to extend the time for filing its response. The district court granted the motion, giving M & M until February 23, 2009 to respond. The district court scheduled a summary judgment hearing for March 17, 2009. M & M filed its response to FFI's motion on March 2, 2009.

[¶ 37] On March 9, 2009, M & M filed a motion to vacate the hearing date on the ground that discovery was not completed. The same day, M & M filed a motion to amend its answer to add as affirmative de-

fenses that FFI failed to mitigate its damages and repudiated the contract by failing to collect on the past due accounts. M & M also filed a motion to compel FFI to respond to discovery. According to M & M's appellate brief, the district court denied the motion to vacate the hearing and never ruled on the motion to amend the answer. FFI responded to M & M's discovery request before the hearing. The district court held the hearing as scheduled and orally granted summary judgment for FFI.

[¶ 38] A district court has broad discretion in ruling on a motion for continuance, and absent a clear abuse of discretion, we will not disturb its ruling. *Abraham v. Great Western Energy, LLC,* 2004 WY 145, ¶ 16, 101 P.3d 446, 454 (Wyo.2004). When a district court denies a motion for continuance, we will find an abuse of discretion only upon concluding the ruling is so arbitrary as to deny the moving party due process. *Id.* The moving party has the burden to prove actual prejudice and a violation of his rights. *Id.* In reviewing a denial, we look at the particular circumstances of the case and the reasons presented to the district court when the motion was made. *Id.*

[¶ 39] The record here shows that by February 23, 2009, the only discovery requests FFI had not responded to satisfactorily in M & M's view involved account notes or transaction ledgers for four customers and any collection expenses FFI incurred. Prior to the summary judgment hearing, FFI responded to the latter request as follows: "Other than telephone expense and time expended by Mr. Shaw contacting various delinquent account holders, neither of which have been quantified, there are no other expenses...." FFI responded to the former request by stating that M & M was in possession of the information on four of the accounts and FFI received payment of an identified amount on one other account.

[¶ 40] On March 17, 2009, the same day as the summary judgment hearing, M & M signed a withdrawal of its motion to compel discovery, stating that FFI had satisfactorily amended its discovery responses. M & M filed the withdrawal on March 23, 2009. Given M & M's statement that it was satisfied with the discovery responses, we find no abuse of discretion in the district court's denial of the motion for continuance. Whether or not the district court was aware on the date it denied the motion that discovery had been satisfactorily completed, the record reflects that M & M was satisfied with the responses as of the hearing date. M & M's argument that discovery was not complete and so its motion for continuance should have been granted is not borne out by the record.

[¶ 41] Affirmed.